UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/14/21
```

Study Edge, LLC,

                    Plaintiff,

        —v—

N.Y.C. Department of Education,

                    Defendant.

20-cv-7122 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

This action arises from a contract dispute between Plaintiff Study Edge, LLC and

Defendant N.Y.C. Department of Education.  Before the Court is the DOE's motion to dismiss

the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and Study Edge's

cross-motion for an "extension" of time pursuant to Education Law § 3813(2-A).  Dkt. Nos. 24,

27.  For the reasons that follow, the Court GRANTS the DOE's motion to dismiss.

**I. BACKGROUND**

Plaintiff Study Edge, LLC "is a provider of online educational resources, including

mobile apps, study guides and other learning tools."  Dkt. No. 28 at 6.  In 2016, Study Edge and

Defendant DOE entered into a "listing application contract" under which Plaintiff would provide

a customized educational software, "Algebra Nation," to Defendant.  Dkt. No. 26 at 7 (citing

Dkt. No. 20, Am. Compl. ¶¶ 13, 40).

The contract listed a commencement date of November 1, 2016, and a termination date of

October 31, 2023.  Dkt. No. 20-1 at 2.  The parties negotiated a "per user pricing model" rather

than Study Edge's "normal practice of charging a fixed price" for the software.  Dkt. No. 28 at 7

(citing Am. Compl. ¶ 35).  Study Edge alleges that it relied on DOE's representation that it

would "extend utilization of Algebra Nation to _all_ City students enrolled in Algebra I courses"

and open the program to other math students in agreeing to this pricing structure.  *Id.* at 8 (citing

Am. Compl. ¶ 36; Dkt. No. 20-1 at 39).

> The contract also included a "Dispute Resolution" agreement, which provided:
>
> In the event the Vendor and DOE are unable to resolve their differences concerning a
> determination by the DOE, the Vendor may initiate a dispute in accordance with the
> procedure set forth in this Dispute Resolution Section. Exhaustion of these dispute
> resolution procedures shall be a precondition to any lawsuit permitted hereunder.

Dkt. No. 20-1 at 6–7.  Section 17 further provides that the parties "authorize the Dispute

Resolution Officer ('DRO') selected by the Executive Director to decide all questions of any

nature whatsoever arising out of, under or in connection with, or in any way related to or on

account of, this Agreement."  *Id.* at 6.  If Study Edge "protests the determination of the DRO" it

could "commence a lawsuit in Supreme Court, New York Count under Article 78 of the New

York Civil Practice Law and Rules."  *Id.* at 7.  Finally, Section 10 of the contract provided that

the contract could be terminated "upon 30 day written notice to the Vendor by the Executive

Director [of DOE]."  *Id.* at 5.

Study Edge alleges that it first learned in August 2017 that DOE "was limiting Algebra

Nation only to students enrolled in a particular DOE sub-curriculum called 'Algebra for All,'"

rather than providing the program to all Algebra I students as Study Edge expected.  Dkt. No. 28

at 9 (citing Am. Comp. ¶ 53).  Study Edge raised its concerns to DOE in 2017 and 2019, "but

things ultimately did not improve" in terms of student use of the software.  *Id.* at 10.

In September 2019, "DOE's Director of Algebra verbally informed Study Edge's

president that DOE would likely end funding for Algebra Nation."  *Id.* (citing Am. Compl. ¶ 74).

Study Edge's president subsequently emailed DOE on September 13, 2019, inquiring whether

DOE "will continue with this agreement, according to all of the funding and other terms, for this school year," and if not, requesting DOE connect Study Edge "with the appropriate contacts for dispute resolution." Dkt. No. 13-4 at 7–8.  The email stated Study Edge's hope that the issue could be resolved within ten days.  *Id.* at 8.

On September 17, 2019, another DOE staffer responded that she "shared [the September 13] email with the Division of Contracts and Purchasing" and Study Edge could expect a response from that Division and/or "the Division of Teaching & Learning."  *Id.* at 6.  Study Edge sent a follow-up email on September 28, 2019 and did not receive a response.  *Id.*

On October 11, 2019, Study Edge's pre-litigation counsel sent an email letter to the Division of Contracts outlining its objections to DOE's conduct under the contract and attaching an invoice for the 2018-19 school year, in the amount of $407,028.15—$358,938.00 for the "Guaranteed Base" of 2018-19 school year licenses, and $48,090.15 for incremental licenses in the 2018-19 school year above the contract's base.  Dkt. No. 13-4 at 3–5; *see also* Dkt. No. 28 at 8.  Study Edge demanded that DOE pay the invoice by November 7, 2019, and either commit to funding the program for the 2019-20 school year or "immediately appoint a DRO pursuant Section 17 of the Agreement."  Dkt. 13-4 at 3–4.  Study Edge further stated that it if DOE appointed a DRO, Study Edge would "deem the time period for the DRO to consider all materials and render his decision to have commenced on September 23, 2019," ten days after the Study Edge Present sent his initial September 13 e-mail.  *Id.*

Receiving no response by October 30, 2019, Study Edge's counsel sent another letter asserting that DOE's "failure to appoint a DRO and to provide a substantive response to the issues raised in Algebra Nation's September 13, 2019 email and our subsequent October 11 letter is an exhaustion by Algebra Nation of the dispute resolution procedure set forth in Section 17 of

the Agreement. Algebra Nation will exercise all other remedies available to it under the

Agreement, at law and in equity, including, without limitation, the commencement of a lawsuit."

Dkt. No. 13-6 at 2.

On December 13, 2019, DOE's Director of Algebra responded by email to the October 7,

2019 invoice (which was attached to the October 11 letter).  Dkt. No. 13-7 at 2.  The email stated

that DOE would pay the $358,938.00 corresponding to the base level of licenses but disputed the

additional $48,090.15 for incremental licenses.  DOE requested an adjusted invoice and stated

that DOE would "pay the revised invoice amount as the final payment in connection with the

termination of the Agreement." Dkt. No. 13-7 at 2.  The email did not acknowledge Study

Edge's prior request to commence dispute resolution.

On March 12, 2020, "Study Edge filed a Notice of Claim with DOE pursuant to N.Y.

Education Law § 3813."  Dkt. No. 28 at 13 (citing Dkt. No. 20-2).  The parties do not allege any

communications occurred between December 13 and March 12, 2020.  The day following Study

Edge's Notice of Claim, DOE paid $358,938.00 of the invoice amount, "leaving a balance of

$48,090.15 unpaid." *Id.* (citing Am. Compl. ¶¶ 96, 113).

Study Edge filed the instant action on September 1, 2020, alleging four causes of

action—three of which assert breach of contract and breach of the implied covenant of good faith

and fair dealing, and one which asserts an account stated claim.  Dkt. No. 1.  DOE filed a motion

to dismiss the complaint on November 19, 2020.  Dkt. No. 12.  Study Edge subsequently

amended its complaint on December 10, 2020 and added a fifth cause of action seeking a

declaratory judgment.  Dkt. No. 20.  DOE then filed the instant motion to dismiss the amended

complaint on January 8, 2021.  Dkt. No. 24.  Study Edge simultaneously filed its opposition to

the motion and a cross-motion for relief under N.Y. Education Law § 3813(2-A) on January 29,

2021.  Dkt. Nos. 27, 28.  DOE filed its reply in support of the motion to dismiss and its

opposition to Study Edge's cross-motion on February 19, 2021.  Dkt. No. 32.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient

factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Pleadings that

contain no more than conclusions are not entitled to the assumption of truth otherwise

applicable." *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2013) (cleaned up).

In resolving a motion to dismiss, review is generally limited to "the facts as asserted

within the four corners of the complaint, the documents attached to the complaint as exhibits,

and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet

Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

## III. DISCUSSION

Defendant argues, *inter alia*, that Plaintiff's complaint must be dismissed in its entirety

because Study Edge failed to comply with the contract's dispute resolution procedures and did

not properly invoke the ADR procedures as to the disputed $48,090.15.  Dkt. No. 26 at 13; Dkt.

No. 32 at 13.  Study Edge does not dispute that it failed to comply with the ADR procedures, but

rather contends that DOE's "refus[al] to appoint a DRO or otherwise proceed" with the ADR

procedures constitutes both waiver and "a material breach" of the ADR covenant, "which in turn

excuses Study Edge from that covenant."  Dkt. No. 28 at 14.  Even assuming that Study Edge's

communications were sufficient to invoke the ADR procedures, the Court finds that DOE's

conduct did not waive compliance with the ADR procedures and did not amount to a "material breach" of the contract as a matter of law.

Study Edge first argues that DOE's conduct amounts to a "material breach" of the contract, excusing Study Edge's compliance with the ADR procedures. Dkt. No. 28 at 14. "A breach is material when it 'substantially defeats the purpose of that contract.'" *Gomez v. MLB Enterprises, Corp.*, No. 15-CV-3326(CM), 2018 WL 3019102, at *12 (S.D.N.Y. June 5, 2018) (quoting *In re Lavigne*, 114 F.3d 379, 387 (2d Cir. 1997)).  Study Edge does not specifically contend how failure to appoint a DRO within the timetable set by Study Edge "substantially defeat[ed] the purpose of that contract." *Id.*  It simply asserts that "DOE refused to appoint a DRO or otherwise proceed" and that "this constitutes a material breach." Dkt. No. 28 at 14.  This Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.  This conclusory assertion is insufficient to establish a material breach of the contract.  In any event, courts have found a material breach when a refusal to arbitrate resulted in plaintiff being left without a remedy.  *See Gomez*, 2018 WL 3019102, at *12. But here Study Edge has not alleged that ADR is no longer available due to Defendant's alleged misconduct.  Accordingly, Study Edge has failed to sufficiently plead a material breach of contract.

Study Edge next argues that DOE's failure to appoint a DRO within the time requested by Study Edge results in DOE's waiver of the ADR procedures. Dkt. No. 28 at 13–14.  "A refusal by a party to arbitrate upon demand duly made by the other side constitutes a waiver." *Spano v. V & J Nat'l Enters., LLC*, 264 F. Supp. 3d 440, 453 (W.D.N.Y. 2017) (cleaned up) (quoting *Zhang v. Wang*, 317 F. App'x 26, 28 (2d Cir. 2008)).  But "[d]elay alone, without any prejudice to the opposing party aside from expense and inconvenience, is insufficient to

constitute waiver." *Russo v. Simmons*, 723 F. Supp. 220, 223 (S.D.N.Y. 1989) (citing *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985)).  This is because New York public policy generally "favors and encourages arbitration and alternative dispute resolutions." *Westinghouse Elec. Corp. v. New York City Transit Auth.*, 82 N.Y.2d 47, 53–54 (1993) (cleaned up).  In that spirit, "waiver of the right to arbitration is not to be lightly inferred." *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 104–05 (2d Cir. 2002) (citation omitted).  For this reason, the cases cited by Plaintiff are inapposite.  In each of those cases, an employers' inaction or refusal to engage in arbitration foreclosed arbitration as a remedy.  *See Gomez*, 2018 WL 3019102, at *12; *Nadeau v. Equity Residential Props. Mgmt. Corp.*, 251 F. Supp. 3d 637, 641 & n.1 (S.D.N.Y. 2017); *Spano*, 264 F. Supp. 3d at 454.  And as noted above, Study Edge does not allege that DOE's conduct forecloses ADR pursuant to Section 17 of the contract.[1]

Plaintiff notes that Defendant fails to provide any explanation for its failure to commence ADR between the September email and October 11 letter (or, indeed, its failure to act after the October 30 letter or March 12 Notice of Claim).  Dkt. No. 28 at 16.  And Courts have noted the reason for delay in analyzing waiver.  *See Russo*, 723 F. Supp. at 223.  However, even if Plaintiff does not have an agreeable reason as to the delay, the "more important[]" inquiry is whether a plaintiff has demonstrated that it has been sufficiently prejudiced.  *Russo v. Simmons*, 723 F. Supp. 220, 223 (S.D.N.Y. 1989); *see also Thyssen, Inc.*, 310 F.3d at 105.  Here, Plaintiff alleges none.  Accordingly, Plaintiff has failed to allege that DOE's conduct "reflects a positive and unequivocal election to ignore his or her arbitration rights.'" *Zhang v. Wang*, 317 F. App'x 26,

---

[1] Plaintiff's reliance on *Baker & Taylor, Inc. v. Alphacraze.com Corp.* to find waiver is also easily distinguishable.  There, non-signatories to an agreement attempted to enforce an arbitration agreement.  602 F.3d 486, 491 (2d Cir. 2010).  The court found that because they had not signed the agreement, they had "explicit[ly] disclaim[ed] . . . any legal obligation to arbitrate and their refusal to do so effectively waives any such claim." *Id.*  Such "explicit disclaimer" is not present in the instant case.

28 (2d Cir. 2008) (summary order) (quoting *Great Northern Assocs., Inc. v. Continental Cas. Co.*, 596 N.Y.S.2d 938, 941 (N.Y. App. Div. 3d Dep't 1993)).

Because Plaintiff does not sufficiently allege that DOE waived compliance with the ADR procedures, Plaintiff's failure to comply with those procedures bars this suit.[2]

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's motion to dismiss the amended complaint. The Court does not reach and therefore administratively denies Plaintiff's cross-motion for relief pursuant to N.Y. Education Law § 3813(2-A).  Defendant's motion to dismiss the original complaint is denied as moot.  This resolves Dkt. Nos. 12, 24, 27.

The Clerk of Court is respectfully directed to enter judgment and to close the case.

SO ORDERED.

Dated: September 14, 2021
       New York, New York

_____
       ALISON J. NATHAN
       United States District Judge

---

[2] Because the Court grants Defendant's motion to dismiss on the basis that Plaintiff failed to comply with the contract's dispute resolution procedures, it need not address Defendant's arguments that the first and third causes of action are barred by the statute of limitations, that the third cause of action is redundant of the first cause of action, and that the third, fourth, and fifth causes of action fail to state a claim.